**FILED**

2009 May-13  PM 01:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| **RAFAEL CALISTO MORALES** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:08-cv-00341-LSC-JEO** |
| | ) | |
| **FEDERAL BUREAU OF PRISONS,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

This is a petition for a writ of habeas corpus brought pursuant to 28

U.S.C. § 2241, challenging the constitutionality of prison disciplinary

action.  (*See* "Petition for Writ of Habeas Corpus Under 28 (sic) Section

2241" (hereinafter "Petition" or "Pet.")).[1]  The petitioner, Rafael Calisto

---

[1]The Petition is Doc. 1-3 at p. 1-6.  References to "Doc. ___" are to the document number assigned to filings by the clerk of this court.  Because the petition in this case was initially filed in the United States District Court for the District of Columbia and then transferred to this court, "Doc. 1" encompasses several separate documents from the transferor court, namely: (1) the docket sheet from the transferor court (Doc. 1-1); (2) a "Memorandum and Transfer Order" entered by the transferor court (Doc. 1-2); and (3) the § 2241 habeas petition itself, which also attaches a supporting memorandum of law that is itself also verified pursuant to 28 U.S.C. § 1746, as well as exhibits consisting of evidentiary materials.  The petition,

Morales, is a federal inmate currently incarcerated at McRae Correctional

Facility, a prison in McRae, Georgia, operated by Corrections Corporation

of America pursuant to a contract with the Federal Bureau of Prisons

("BOP").  The petitioner is serving a sentence imposed pursuant to

convictions entered by federal district courts in Florida.  Upon

consideration, the court finds that the petition is due to be dismissed

with prejudice.

## I.    BACKGROUND

### A.  The Search of the Petitioner's Cell and Prison Disciplinary

Proceedings

On September 4, 2006, while an inmate at the Federal Correctional

Institution in Talladega, Alabama ("FCI Talladega"), prison staff

conducted a search of a cell assigned to the petitioner and another

---

memo and exhibits are entered in this court's CM/ECF as a single document, Doc. 1-3, with consecutive pagination from 1 to 46 stamped in the upper right corner.  Adding to this confusion is that fact that the petitioner's supporting memorandum of law cites to lettered exhibits, *e.g.*, "Exhibit A," "Exhibit B," etc., but the court cannot discern any such corresponding letter designations upon the attached evidentiary materials to which he is presumably referring.  Accordingly, references are made herein to the Petition, which is Doc. 1-3 at pages 1-6; the Petitioner's Memorandum of Law ("Pet. Mem"), which is Doc. 1-3 at pages 7-17, and to identified documents within the petitioner's exhibits, encompass Doc. 1-3 at pages 18 through 46.

inmate.  (Incident Report[2] § 11).  In that search, according to an Incident Report, *see* 28 C.F.R. § 541.15, a corrections officer ("CO") found three packages hidden inside a towel holder, as well as a box cutter blade. (*Id.*)  The Incident Report further states that a green and brown leafy substance was discovered in one of the packages.  (*Id.*)  The substance was turned over to a Lieutenant on the prison staff who conducted a test that was positive for marijuana.  (*Id.*)   He retested the substance, which also was positive.  (*Id.*)  Following the search, the petitioner and his cellmate were placed in the Special Housing Unit ("SHU").  (Petitioner's Memorandum of Law (hereinafter "Pet. Brief")[3] at 3; Administrative Detention Order[4])

The following day, Incident Reports were issued to the petitioner and his cellmate.  (Declaration of Harriet Mitchell ("Mitchell Decl.")[5] ¶ 4;

---

[2]The Incident Report is Doc. 1-3 at 18.

[3]The Petitioner's Brief is Doc. 1-3 at 7-17.  Pinpoint citations thereto herein are to the pagination of the Petitioner's Memorandum itself, not to the pages of the broader Doc. 1-3.  Thus, for example, the citation in the text to "Pet. Brief at 3" corresponds to Doc. 1-3 at 9.

[4]The Administrative Detention Order is Doc. 1-3 at 19.

[5]As with the Petition, the Government's response in opposition encompasses both a memorandum of law and attached evidentiary exhibits, that are all part of the

Incident Report).  The Incident Report issued to the petitioner described

that the search had uncovered both a substance alleged to contain

marijuana and a box cutter blade.  (*See* Incident Report § 11).  However,

the only formal code violation asserted against the petitioner was based

upon possession of the former contraband and not the latter.  That is, the

Incident Report specifically charged the petitioner only with possession of

a drug not prescribed for the individual by the medical staff, a violation

of Code 113 of the prison rules contained in BOP Program Statement

number 5270.07, entitled "Inmate Discipline and Special Housing Units

(the "BOP Program Statement")[6], (*see* Incident Report §§ 9 & 10; BOP

Program Statement,  Ch. 4, p. 5, Code 113), notwithstanding that an

inmate's possession of a box cutter blade would also be a distinct code

offense under prison rules. (*See* BOP Program Statement, Ch. 4, p. 5,

---

same electronically filed document, Doc. 5, which is consecutively paginated from 1
to 71.  The Government's memorandum of law, for which the court shall use the
shorthand reference, "Gov't Brief" is Doc. 5 at 1-15.  The government's exhibits,
numbered "1" through "9" are located at Doc. 5 at 16-71.  Each exhibit cited herein
will be separately identified.  For example, the government's Exhibit 9 is Mitchell's
Declaration, which is Doc. 5 at 67-71.

[6]The BOP Program Statement is included in the record in what appears to be its
entirety, 130 pages, as the government's Exhibit 14, Doc. 13-3.  An excerpt of the
BOP Program Statement is the government's Exhibit 7, Doc. 5 at 37-58.

Code 104 ("Possession, manufacture, or introduction of a gun, firearm, weapon, sharpened instrument, knife, dangerous chemical or any ammunition").

Prison officials commenced an investigation into the incident, and, on September 6, 2006, the petitioner, whose primary language is Spanish, was questioned, through the aid of an interpreter provided by the prison. (*See* Committee Action and Investigation Report §§ 24, 25)[7] The petitioner denied any wrongdoing, stating, "I don't smoke cigarettes or smoke marijuana.  I have no knowledge of any drugs or anything else in that cell."  (*Id*. § 24).  He was granted an opportunity to identify any witnesses or present other facts concerning the incident, but he declined to do so.  (*Id*. § 25)  Based on the information in the incident report and the testing showing that the substance found in the cell contained marijuana, the investigating officer concluded that the petitioner was guilty of the drug possession charge and recommended that the report be

_____

[7]The Committee Action and Investigation Report is actually the same document as the Incident Report but with additional entries and what appears to be an amendment to the initial entries in the Incident Report section.  The Committee Action and Investigation Report is the government's Exhibit 2, which is Doc. 5 at 22-24.

forwarded to the Unit Disciplinary Committee ("UDC") and the Discipline

Hearing Officer ("DHO") for further investigation.  (*Id.* § 26)

On September 7, 2006, the UDC held an initial hearing pursuant to

28 C.F.R. § 541.15(b), with an interpreter being supplied to the

petitioner.  (Committee Action and Investigation Report § 17).  The

petitioner again denied that any marijuana was his, further asserting that

he is "too old" to smoke drugs.  (*Id.*)  Based on the incident report, the

UDC referred the charge to the DHO for further hearing.  (*Id.* § 18(B));

*see also* 28 C.F.R. § 541.15(f)(3).  The petitioner was given a Notice of

Discipline Hearing before the DHO and was advised of his rights through

an interpreter.  ("Notice of Discipline Hearing Before the (DHO)"

(hereinafter "DHO Hrg. Notice")[8]; "Inmate Rights at Discipline Hearing"

(hereinafter "Hrg. Rights Notice")[9]).  At that time, the petitioner waived

his rights to have a staff representative or to call any witnesses.  (DHO

Hrg. Notice).

---

[8]The DHO Hrg. Notice is part of the government's Exhibit 5 and is Doc. 5 at 30.

[9]The Hrg. Rights Notice is also part of the government's Exhibit 5 and is Doc. 5 at 31.

On September 18, 2006, after the petitioner's hearing before the UDC but prior to his final hearing before the DHO, the substance found in the petitioner's cell was tested for a third time.  (*See* E-mail from Cynthia Thompson to Harriet Mitchell dated 9/18/06 ("Thompson E-mail")[10]; Mitchell Decl. ¶ 7).  This time, however, the test was negative for marijuana.  (Thompson E-mail; Mitchell Decl. ¶ 7).  The petitioner was also given a urinalysis, which likewise came back negative. (Thompson E-mail; Mitchell Decl. ¶ 7).  Based on these results, DHO Harriet Mitchell drafted a memo to the petitioner stating as follows:

> On September 4, 2006, you received an incident report for Possession of Any Narcotics or Paraphernalia, not Prescribed by Medical Staff, Code 113.  After reviewing section 11 of the incident report, as well as receiving additional information, the charge has been changed to Possession, Manufacture, or Introduction of a Weapon, Sharpened Instrument, Knife (Code 104), as this is the more appropriate charge.  The change has been made in Sections 9 and 10 to reflect this and section 11 of the report will remain the same.

(Memorandum from DHO Mitchell to Petitioner dated 9/20/06 (hereinafter the "DHO Memo")[11]; *see also* Mitchell Decl. ¶ 7; Committee

---

[10]The Thompson E-mail is the government's Exhibit 3, which is Doc. 5 at 26.

[11]The DHO Memo is the government's Exhibit 4, which is Doc. 5 at 28.

Action and Investigation Report § 9 & 10).  DHO Mitchell personally

delivered this memo regarding the substituted charge to the petitioner in

his cell in the SHU.  (Mitchell Decl. ¶ 8).  It is undisputed that the

petitioner received the memo and signed it, apparently on September 25,

2006.[12]  The petitioner now claims, however, that he did not understand

what the document said because he allegedly "is illiterate and does not

speak one iota of English"  (Pet. Brief at 10), or at least no more than

"some words as to get around prison [regarding] basic needs."

("Petitioner's Reply to Respondent's Response to Motion (sic) to Show

_____

[12]There appears to be a discrepancy regarding when this memo was actually
delivered to the petitioner.  The memorandum is itself dated as having been drafted
on September 20, 2006.  (DHO Memo).  The government's brief assumes that such is
also the date that the memo was delivered to the petitioner (Gov't Brief at 4).
Indeed, the petitioner himself likewise asserts in his brief that the delivery occurred
on that date.  (Pet. Brief at 4).  However, the DHO Memo itself contains what appears
to be a handwritten notation made contemporaneous with delivery indicating receipt
by the petitioner on "9/25/06."  (DHO Memo).  Likewise, the DHO states both in her
declaration, verified under § 1746, and in her final disciplinary action report that the
delivery of the memo did not occur until September 25, 2006.  (Mitchell Decl. ¶ 8;
Discipline Hearing Officer Report ("DHO Report"), which is the government's Exhibit
6, Doc. 5 at 33-36, at 3).  Therefore, the court will assume, for purposes of the
instant disposition, that the evidence would support that the DHO did not deliver the
memorandum to the petitioner until September 25th, as this can only be beneficial to
the petitioner given that it would afford him shorter notice of the amendment to the
charge prior to the disciplinary hearing before the DHO.

Cause" ("Pet. Reply")[13] at 6).  The petitioner further claims that he

signed the memorandum "under coercion and intimidation," in that the

DHO allegedly showed him the paper through the cell's feeding slot and

"with intimidating screaming commands yelled and pointed at the paper

making gestures at [the petitioner] to sign it."  (Pet. Reply at 13).  The

DHO denies that she engaged in any threatening, coercive, or

unprofessional conduct.  (Mitchell Decl. ¶ 8).  She also disputes the

extent of the petitioner's supposed inability to communicate in English.

While acknowledging a degree of limitation that counseled provision of an

interpreter for interviews and hearings, she says that the petitioner was

proficient enough in English to understand the investigation and that he is

able to understand English and to speak "broken" English.  (*Id*. ¶ 5).  She

says that she went to the petitioner's cell with the memorandum,

explained to him that the charges were being changed and what they

were.  (*Id*. ¶ 8).  She says that she asked him if he understood, and he

replied, "yes."  (*Id*.)  She claims that she asked the petitioner to sign the

memo, and he complied.  (*Id*.)

---

[13]The Petitioner's Reply is Doc. 6.

On September 27, 2006, DHO Mitchell held a final hearing, pursuant to 28 C.F.R. §§ 541.16(c) and 541.17, on the charge against the petitioner alleging possession of a weapon in violation of Code 104 of the BOP Program Statement.  (DHO Report).  The petitioner was supplied with an interpreter during the hearing.  (*Id.* § V).  The petitioner stated that he had been in that cell for one year, but he denied having any knowledge of a weapon being there.  (*Id.* § III(B)).  He further stated that anyone could have put it there and that he thought that someone may have wanted the cell and put the weapon there.  (*Id.*)  On November 6, 2006, however, the DHO issued a report finding that the petitioner was guilty of possession of a weapon, as charged.  (*Id.* §§ IV, V).  She stated that she considered the petitioner's statement but found more credible the written statement of the reporting CO that he had found a box cutter blade inside the towel holder of the petitioner's cell.  (DHO Report § V) The DHO stated her belief that the petitioner did, in fact, know about the blade despite his denials, and she went on to explain further that the weapon was found in a common area of the cell and that it was the petitioner's responsibility to ensure that his cell was free from

contraband.  (*Id.*)  The petitioner was sanctioned with loss of 40 days of previously earned "good conduct time," disciplinary segregation for 50 days, and loss of commissary privileges for 180 days.  (*Id.* § VI).

## B.   Administrative Appeals

On November 22, 2006, the petitioner pursued an administrative appeal of the decision of the DHO to the BOP Regional Director.  (*See* Regional Administrative Remedy Appeal ("RAR Appeal")[14], Doc. 5 at 61-62); *see also* 28 C.F.R. §§ 541.19 and 542.15(a). That appeal was denied. (RAR Appeal, Doc. 5 at 63).  The petitioner then sought a final administrative appeal to the BOP Office of General Counsel, *see* 28 C.F.R. § 542.15(a), which was likewise denied, on March 19, 2007.  ("Central Office Administrative Remedy Appeal" ("COAR Appeal")[15], Doc. 5 at 64-66).

Beginning in November 2007, during the pendency of his administrative appeals, the petitioner sought to obtain from prison staff

---

[14]The RAR Appeal is part of the government's Exhibit 8 and is Doc. 5 at 61-63.

[15]The COAR Appeal is also part of the government's Exhibit 8 and is Doc. 5 at 64-66.

and later from the BOP itself pursuant to the Freedom of Information Act,

5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, additional

information and all documents and evidence relating to the search of his

cell and the offense that he was found to have committed.  (*See* Doc. 1-3

at 21-24 and 38-44).  These requests included copies of any photographs

taken of the packages and the box cutter blade discovered in the search

of the cell, as well as copies of the results of the tests performed on the

substance initially found to contain marijuana.  (*Id.* at 39).  In addition,

the petitioner was under the impression that the search of his cell had

been prompted by information provided by a confidential informant, and

the petitioner desired to discover his identity and any documents or other

evidence supplied by him to prison staff.  (*Id.*).  Ultimately, however, the

petitioner was not given any additional test results, photographs, or other

evidence, nor was he supplied any information or documents regarding an

informant.

      **C.    The Filing of the Petition and Transfer to This Court**

On December 26, 2007, the petitioner filed his pro se[16] petition in

this case in the United States District Court for the District of Columbia,

naming a host of respondents, including the BOP, D.B. Drew as the

Warden of FCI Talladega, the UDC Chairman, the DHO, the personnel that

denied his administrative appeals, as well as several named and unnamed

BOP officers and staff.  (*See* Pet. Brief at 1).  The petition claims that the

petitioner's due process rights were violated in various respects.  On

January 10, 2008, the district court in Washington, D.C., entered an order

transferring the action to this court on the ground that venue was

improper because the petitioner was in custody within the territorial

boundaries of the Northern District of Alabama.  This court issued an

order requiring the respondents to show cause why the relief sought in

the petition should not be granted.  (Doc. 2).  The United States Attorney

---

[16]The petition and attached supporting memorandum of law are both signed by the petitioner and nominally filed "*pro se*" (Doc. 1-3 at 6, 16), which literally means "in his own behalf."  *Black's Law Dictionary* 1099 (5th ed. 1979).  As noted above in the text, however, one of the principal allegations underlying the petitioner's claims is that he "is illiterate and does not speak one iota of English."  (Doc. 1-3 at 10).  If those assertions are to have any credence whatsoever, it must be assumed that the petitioner did not himself draft his petition or the materials filed in support thereof.  Nonetheless, there is nothing to indicate that the petitioner is represented by an attorney in this matter.

for the Northern District of Alabama filed a response to the petition on behalf of Constance Reese, who was alleged to be the warden at FCI Talladega and was summarily stated to be "the proper defendant." (Gov't Brief at 1 & n.1).  The response denied any constitutional violation or other wrongdoing and argued that the disciplinary action taken against the petitioner was justified under the facts and the law.  (*See generally* Gov't Brief).

The petitioner filed a reply in which he re-argued his due process claims as stated above and also attempted to raise new claims.  (Pet. Reply).   This would include a *Brady*[17]-type claim in which the petitioner asserts that he had "recently learned that his cellmate had pleaded guilty and accepted full responsibility for the box cutter blade in the cell."  (*Id.* at 9).  He claims that he was entitled to be advised of this evidence but it was concealed from him, depriving him of a fair hearing.  (*Id.* at 10).  The respondent filed a "surreply" to the petitioner's reply but did not address the petitioner's new argument that his cellmate had assumed all responsibility for the weapon.  ("Respondent's Surreply to Petitioner's

---

[17]*Brady v. Maryland*, 373 U.S. 83 (1963).

Reply" ("Gov't Surreply")[18]).  The petitioner then fired another shot, a

"Traverse to the Respondents' Surreply to Petitioner's Reply."  ("Pet.

Traverse")[19]), and on October 8, 2008, the petitioner filed a notice of a

change of address, reflecting that he has been transferred from FCI

Talladega to McRae Correctional Facility ("McRae CF") in McRae, Georgia.

(Doc. 10).

    The Court thereafter entered an order requiring the government to

respond to the petitioner's claim that evidence showed that his cellmate

was solely responsible for the box cutter blade.  (Doc. 11).  The

government responded as directed.  (*See* Doc. 13).  Included with the

government's response is DHO Mitchell's Report pertaining to the charge

against the petitioner's cellmate, whose name has been redacted.

("Cellmate's DHO Report").[20]  That report shows that the cellmate's DHO

hearing commenced at 11:00 p.m. on September 27, 2006, or about 20

minutes after the petitioner's similar hearing before the same DHO.  (*See*

---

[18]The Government's Surreply is Doc. 8.

[19]The Petitioner's Traverse is Doc. 9.

[20]The Cellmate's DHO Report is the government's Exhibit 13, Doc. 13-2.

DHO Report § I(B); Cellmate's DHO Report § I(B)).  The report also shows that the cellmate actually denied that the weapon was his or having knowledge of where it came from, but he said he would take ownership of it so that the petitioner would not be charged.  (Cellmate's DHO Report § III(B)).  Ultimately, the DHO found that the cellmate, like the petitioner, was guilty of possession.  (*Id.* §§ IV, V).

## II.    DISCUSSION

### A.    Proper Respondent and Jurisdiction

A federal inmate may file a petition for habeas corpus relief under 28 U.S.C. § 2241 to challenge the execution of his sentence.  *Antonelli v. Warden, U.S.P. Atlanta*, 542 F.3d 1348, 1351-52 & n.1 (11th Cir. 2008). Such challenges include claims asserting that his rights have been violated in connection with the imposition of prison disciplinary action. *See Queen v. Miner*, 530 F.3d 253, 254 n.2 (3d Cir. 2008); *Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001); *see also, e.g.*, *Skinner v. Wiley*, 355 F.3d 1293, 1295 (11th Cir. 2004).

As a threshold matter, however, the court notes that the petitioner's change-of-address notice shows that he is no longer confined

at FCI Talladega, and, indeed, that he is no longer confined within the territorial boundaries of the Northern District of Alabama.  In habeas challenges to present physical confinement, the proper respondent generally is the petitioner's immediate custodian, typically the warden of the facility where the prisoner is being held.  *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004).  Further, a court issuing the writ must have jurisdiction over that custodian.  *Id.* at 442.  Ordinarily, the only proper district for filing a challenge to present physical confinement is the district of confinement.  *Id.* at 443.  However, circuit precedent holds that jurisdiction attaches upon the initial filing of a habeas petition and that it is not destroyed by the government's act of transferring the petitioner thereafter that works an accompanying custodial change.  *See McClure v. Hopper*, 577 F.2d 938, 939-40 (5th Cir. 1978)[21]; *cf. Goodman v. Keohane*, 663 F.2d 1044, 1047-48 (11th Cir. 1981) (recognizing that the court of appeals retains jurisdiction over a habeas appeal notwithstanding the prisoner's removal from the court's territorial jurisdiction during the

---

[21]The decisions of the former Fifth Circuit rendered before October 1, 1981 are binding in the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

pendency of an appeal in violation of Rule 23(a), Fed. R. App. P.)

Rather, as the Supreme Court has explained, "when the Government

moves a habeas petitioner after [he] files a petition naming [his]

immediate custodian, the District Court retains jurisdiction and may

direct the writ to any respondent within its jurisdiction who has legal

authority to effectuate the petitioner's release." *Padilla*, 542 U.S. at 441

(characterizing the holding of *Ex parte Endo*, 323 U.S. 283 (1944)); *see*

*also Fletcher v. Reilly*, 433 F.3d 867, 875 (D.C. Cir. 2006); *Elcock v.*

*Streiff*, 554 F. Supp. 2d 1279, 1281-82 (S.D. Ala. 2008).  Further, issues

regarding whether a habeas petitioner has named the proper respondent

and whether the petition was filed in the correct judicial district are in

the nature of personal jurisdiction and venue defenses that may be

waived or forfeited by the government if not timely raised and argued.

*See Moreland v. Federal Bureau of Prisons*, 431 F.3d 180, 183 & n.8 (5th

Cir. 2005); *Fletcher,* 433 F.3d at 875; *Smith v. Idaho*, 392 F.3d 350, 355-

56 (9th Cir. 2004); *Simon v. United States*, 359 F.3d 139, 143 n.9 (2d Cir.

2004); *Moore v. Olson*, 368 F.3d 757, 758 (7th Cir. 2004); *see also Aziz v.*

*Leferve*, 830 F.2d 184, 186 (11th Cir. 1987) (New York state officials

waived objections to personal jurisdiction in habeas action where they requested transfer of the case to district court in Florida).

The petitioner initially filed his petition in the district court in Washington, D.C., naming a number of respondents, including D.B. Drew in his official capacity as the warden of FCI Talladega.  Under *Padilla*, the petitioner thus filed in the wrong judicial district, but insofar as he named the warden of the institution in which he was then confined, he named the correct respondent, albeit along with a number of other individuals and entities that were not then proper respondents.  The district court in Washington then transferred the action to this judicial district, as the one of the petitioner's confinement.  The government then answered the petition, stating that Constance Reese had become or otherwise was the warden at FCI Talladega, and recognizing that she was "the proper respondent."  (Gov't Brief at 1 & n.1).  Thereafter, the government transferred the petitioner to McRae CF in Georgia.  But because, prior to the transfer, the habeas petition had come to rest in the proper forum with the proper named respondent, *i.e.*, the warden of the institution of confinement, the court concludes that it retains

jurisdiction to hear the petition.  *Elcock,* 554 F. Supp. 2d at 1281-82.

Under *Padilla* and *Endo,* then, this court may direct the writ to any

respondent within its jurisdiction who has legal authority to effectuate

the petitioner's release.  542 U.S. at 441.  The next question is "Who is

such a respondent?"  The petitioner is in the legal custody of the BOP,

which is a named respondent here, and it has the legal authority both to

effectuate the petitioner's release and to adjust his date of release if the

petition is found to have merit.  *See* 18 U.S.C. §§ 3621(a), 3624; *see also*

*Gonzalez v. United States*, 959 F.2d 211, 212 (11th Cir. 1992) ("The

Bureau of Prisons is responsible for computing [a federal inmate's]

sentence and applying appropriate good time credit.")  It is arguable that

the BOP or other named respondents located outside the Northern

District of Alabama might have mounted a defense based on a lack of

habeas jurisdiction or improper venue.[22]  *See Padillia*, 542 U.S. 442-447;

*Schlanger v. Seamans*, 401 U.S. 487, 490-91 & n.4 (1971).  However, the

---

[22]While 28 U.S.C. § 1391(e) allows for nationwide service of process in civil
actions in which each defendant is an officer or employee of the United States or an
agency thereof, the statute does not extend to habeas proceedings.  *Schlanger v.*
*Seamans*, 401 U.S. 487, 490 n.4 (1971).

government has asserted no such arguments on behalf of the

respondents, so the court deems those issues to be waived.  *See*

*Moreland*, 431 F.3d at 183-84; *Fletcher*, 433 F.3d at 875; *Simon,* 359 F.3d

at 143 n.9.  Accordingly, the court concludes that the BOP is a proper

respondent and that the petition is due to be considered on its merits.

*See Moreland*, 431 F.3d at 183-84; *cf. Endo*, 323 U.S. at 304-05

(indicating that, where a petitioner of Japanese ancestry who challenged

his detention by the War Relocation Authority was transferred out of the

district post-filing, the Secretary of the Interior or any official of the War

Relocation Authority, including an assistant director with an office in the

territorial jurisdiction of the district court, would be proper

respondents); *Fletcher*, 433 F.3d at 875 (holding that the United States

Parole Commission was a proper respondent where petitioner was

transferred after filing a proper habeas petition challenging parole

regulations).

### B.    Due Process Claims

The petitioner claims that his due process rights have been violated

because he was unfairly and improperly subjected to prison disciplinary

action that resulted in the revocation of good time credits he had earned.

The Due Process Clause of the Fifth Amendment prohibits the federal

government from depriving a person of life, liberty, or property without

due process of law.  U.S. Const. amend. V.  Those who invoke its

procedural protection must establish that one of these interests is at

stake in connection with a deprivation resulting from state action.  *See*

*Cook v. Wiley*, 208 F.3d 1314, 1322 (11th Cir. 2000).  In addition, the

claimant is required to demonstrate that the procedures afforded by the

government in conjunction with the deprivation were constitutionally

inadequate.  *Bank of Jackson County v. Cherry*, 980 F.2d 1362, 1366 (11th

Cir. 1993).

When the government creates a statutory or administrative scheme

by which inmates may earn good time credits that would result in their

speedier release from confinement, inmates have a "liberty" interest in

such credits as against their revocation through prison disciplinary action.

*Wolff v. McDonnell*, 418 U.S. 539, 557-558 (1974).  The petitioner here

had earned good conduct time credits pursuant to a federal statute.  *See*

18 U.S.C. § 3624(b)(1).  He thus had a liberty interest in those credits

such that they could not be taken away absent constitutionally adequate procedures, pursuant to *Wolff*.[23]

With regard to what process is required, "[p]risoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." *Wilkinson v. Austin*, 545 U.S. 209, 225 (2005).  Therefore, "prison disciplinary proceedings need not provide 'the full panoply of rights' that would be due a defendant in a criminal prosecution."  *Kyle v. Hanberry*, 677 F.2d 1386, 1389 (11th Cir. 1982) (quoting *Wolff*, 418 U.S. at 556). Nonetheless, when a prison disciplinary hearing may result in the loss of good time credits, the inmate is generally entitled to at least the minimal safeguards of the following:

(i) advance written notice of the charges against him, (ii) a

---

[23]Technically, *Wolff* involved a Nebraska state prisoner and a claim under the Due Process Clause of the Fourteenth Amendment, which applies to the States, while the petitioner here is a *federal* prisoner, so his claims are governed by the Due Process Clause of the Fifth Amendment, which applies to the federal government. *See Dusenberry v. United States*, 534 U.S. 161, 167 (2002).  Nonetheless, the protections of *Wolff* also extend to federal inmates.  *See Cleavinger v. Saxner*, 474 U.S. 193, 207 (1985); *Vega v. United States*, 493 F.3d 310, 317 n.4 (3d Cir. 2007); *United States v. Brown*, 59 F.3d 102, 105 n.2 (9th Cir. 1995).

statement of reasons and evidence relied on by the
factfinder, (iii) the questioning of witnesses and presentation
of documentary evidence by the prisoner at the hearing, if not
inconsistent with institutional safety or correctional goals, (iv)
an impartial decision maker, and (v) a limited right to a lay
advocate.

*United States ex rel. Gereau v. Henderson*, 526 F.2d 889, 895 (5th Cir.

1976) (citing *Wolff*, 418 U.S. 539); *see also Young v. Jones*, 37 F.3d 1457,

1459-60 (11th Cir. 1994); *Battle v. Barton*, 970 F.2d 779, 782-83 (11th Cir.

1992).

Further, due process requires only that there be "'some evidence in

the record'" to support a decision of a prison disciplinary board.

*Williams v. Fountain*, 77 F.3d 372, 375 (11th Cir. 1996) (quoting

*Superintendent Mass. Correctional Institution v. Hill*, 472 U.S. 445, 454

(1985)).  "Ascertaining whether this standard is satisfied does not require

[a reviewing court's] examination of the entire record, independent

assessment of the credibility of witnesses, or weighing of the evidence.

Instead, the relevant question is whether there is any evidence in the

record that could support the conclusion reached by the disciplinary

board."  *Id.* (quoting *Hill*, 472 U.S. at 455-56 (bracketed material

original)).

   Put simply, "federal courts cannot assume the task of retrying all prison disciplinary disputes," so they do not re-weigh the evidence or closely examine factual determinations made by prison disciplinary boards. *Young*, 37 F.3d at 1460 (quoting *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. October 1981)). Rather, the role of the federal courts is merely "to determine whether an inmate receives the procedural protections provided by *Wolff* and whether 'some evidence' exists which supports the hearing officer's determination." *Young*, 37 F.3d at 1460. With these standards in mind, the court now turns to the petitioner's specific due process claims.

### 1.   The Sufficiency of the Evidence

   The petitioner asserts that he is "wholly innocent of the charges fabricated by the respondents," (Pet Brief at 11), which the court construes as a claim that the evidence was constitutionally insufficient to support the determination that he possessed the box cutter blade in violation of prison rules. As stated above, the DHO's decision that the petitioner was guilty of the charge need only be supported by "some

evidence," a low threshold. *Williams,* 77 F.3d at 375.  The statements of the CO who performed the search, which is the evidence relied upon by the DHO, are ample to support that a box cutter blade was found in a common area of the cell.  The petitioner claims he was wholly ignorant of the fact that the weapon was in the cell, and he points out that he shared the cell with another inmate and that someone else could have planted the contraband.  However, when only a few inmates have access to the place contraband is found, constructive possession is "some evidence" sufficient to sustain a disciplinary conviction. *See Hamilton v. O'Leary*, 976 F.2d 341, 345 (7th Cir.1992); *Mason v. Sargent*, 898 F.2d 679, 679-80 (8th Cir. 1990); *White v. Kane*, 860 F. Supp. 1075, 1078-79 (E.D. Pa.1994), aff'd, 52 F.3d 319 (3d Cir. 1995) (table).  The court concludes that there was sufficient evidence to support the DHO's determination the petitioner was guilty of the possession charge.

### 2.   The "*Brady*" Claim

The petitioner asserts in his Reply that he has "recently learned that his cellmate had pleaded guilty and accepted full responsibility for the box cutter blade in the cell."  (Reply at 9).  The petitioner does not

explain how or when he came by this supposed information, nor does he

offer any evidence to support that it is, in fact, true.[24]  He argues

nonetheless that he was entitled to be advised of this evidence but it was

concealed from him.  The petitioner says that these circumstances "make

[him] fully innocent" of the weapon possession charge, and that had he

been informed that his cellmate took responsibility for the box cutter

blade, he would have called his cellmate as a witness at the hearing.  (*Id.*

at 10).  Thus, the petitioner contends that he was not afforded a fair

disciplinary hearing as required by due process.

Under *Brady v. Maryland*, 373 U.S. 83 (1963), the prosecution is

constitutionally prohibited in a criminal case from suppressing

exculpatory and other evidence that is favorable to the accused.  *See*

*Maharaj v. Secretary for Dep't of Corrections*, 432 F.3d 1292, 1309 (11th

Cir. 2005).  Certain exculpatory evidence is so clearly supportive of a

claim of innocence that it gives rise to a duty in the prosecution to

---

[24]Rule 602, Fed. R. Evid., provides in relevant part: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony."

produce it even in the absence of a request by a criminal defendant.  *See*

*United States v. Agurs*, 427 U.S. 97, 112-13 (1976); *United States v.*

*Arango*, 853 F.2d 818, 826-27 (11th Cir. 1988).  However, "prison

disciplinary proceedings need not provide 'the full panoply of rights' that

would be due a defendant in a criminal prosecution."  *Kyle v. Hanberry*,

677 F.2d 1386, 1389 (11th Cir. 1982) (quoting *Wolff,* 418 U.S. at 556).

Nonetheless, at least one circuit, the Seventh, has recognized that, under

the due process principles of *Brady* and *Agurs,* prison officials are

required to notify an inmate of known, material, exculpatory evidence

where doing so will not adversely affect the state's penological

objectives, including maintenance of  institutional security.  *See Chavis*

*v. Rowe*, 643 F.2d 1281, 1285-87 (7th Cir. 1981); *Mendoza v. Miller*, 779

F.2d 1287, 1296-97 (7th Cir. 1985); *Campbell v. Henman*, 931 F.2d 1212,

1214 (7th Cir. 1991); *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003).

On the other hand, this position is not without its detractors.  *See, e.g.,*

*Boles v. Chavis,* 454 U.S. 907 (1981) (Rehnquist, J., dissenting from denial

of certiorari) (noting that the Seventh Circuit's decision in *Chavis* "comes

close to disavowing the principles of flexibility and experimentation

expounded in *Wolff* ... and virtually mandates a full panoply of courtroom procedures for what [the Court has] heretofore described as 'diverse' and 'flexible' prison dispute settlement mechanisms"); *Blount v. Johnson*, 2007 WL 1225993, *3 (W.D. Va. 2007). The Eleventh Circuit appears not to have decided the issue. *See Kenney v. Barron*, 239 Fed. Appx. 494, 495, 2007 WL 1793386, *1 (11th Cir. 2007); *see also Howard v. United States Bur. of Prisons*, 487 F.3d 808, 814 n.4 (10th Cir. 2007) (declining to decide the issue); *Nickens v. Cabana*, 993 F.2d 1543, 1993 WL 185741 (5th Cir. 1993) (table) (assuming without deciding that *Brady* applies to prison disciplinary proceedings); *King v. Wells*, 760 F.2d 89, 92 n.2 (6th Cir. 1985) (declining to address whether the failure of prison officials to disclose exculpatory evidence violated due process). The court concludes that it is likewise unnecessary to decide in this case whether a prisoner enjoys a *Brady*-like due process right requiring prison authorities to supply him with exculpatory evidence in connection with prison disciplinary proceedings. This is because even if one assumes that such a right exists, it was not violated under the circumstances here.

The Eleventh Circuit has explained:

> To establish a *Brady* violation, a petitioner must show that:
> (1) the prosecution possessed evidence favorable to the
> accused, because it was either exculpatory or impeaching,
> and did not disclose it to the defense; (2) the State
> suppressed the evidence such that the defense did not
> otherwise possess the evidence and could not reasonably have
> obtained it; and (3) the evidence was material, and its
> absence yielded prejudice. *See, e.g., Kelley v. Sec'y for the
> Dep't of Corr.*, 377 F.3d 1317, 1354 (11th Cir. 2004); *Strickler
> v. Greene*, 527 U.S. 263, 281-82 (1999). Evidence is material
> so as to establish prejudice only "if there is a reasonable
> probability that, had the evidence been disclosed to the
> defense, the result of the proceeding would have been
> different. A 'reasonable probability' is a probability sufficient
> to undermine confidence in the outcome." *United States v.
> Bagley*, 473 U.S. 667, 682 (1985).

*Gary v. Hall*, 558 F.3d 1229, 1255 (11th Cir. 2009).

The petitioner's disciplinary hearing actually occurred prior to that

in which his cellmate said he was willing to take responsibility for the

weapon in their cell.  Therefore, even assuming that such testimony was

favorable to the petitioner on some level, it cannot be said that, at the

time of the petitioner's hearing, prison authorities "possessed"

information that might be deemed exculpatory nor that they

"suppressed" evidence from the petitioner.  But more to the point, the

evidence in question was not actually exculpatory.  In the first place,

constructive possession of the weapon could be joint as well as sole,

especially since all inmates may be held responsible for the presence of

contraband in a common area of a cell.  Second, the DHO Report on the

charge against the cellmate shows that while the cellmate stated he was

willing to assume responsibility for the weapon so that the petitioner

would not be punished, the cellmate unambiguously *denied* that the

weapon was actually his or that he had knowledge of it or how it came to

be in their cell.   The court likewise concludes that there is not a

reasonable probability that disclosure of such statements that do not

actually undermine the proposition that the petitioner was guilty of the

offense would have changed the outcome of his disciplinary hearing.

Even assuming that *Brady* might extend to prison disciplinary

proceedings, the court concludes that no violation occurred.  *See United

States v. Paulino*, 445 F.3d 211, 224 (2d Cir. 2006) (failure to disclose

father's plea proposal whereby he would take responsibility for drugs

found in his son's closet did not exculpate son and did not violate *Brady*).

### 3.    The Marijuana Charge

The petitioner also claims that his procedural due process rights

were violated in that the Incident Report originally charged him with possession of marijuana, based upon the substance found in his cell.  He urges that this charge was fabricated by the BOP and its employees, and he emphasizes the later testing showing that the substance found did not actually contain marijuana.  (*See* Pet. Brief at 6).  The government responds that the petitioner's arguments on this issue are mere "surplusage" because the drug possession charge was dropped and was not considered in the disciplinary action ultimately taken against him. (Gov't Surreply at 1).  The court agrees with the government.

The DHO's written report acknowledges that the marijuana charge was dropped, and the report further indicates that the DHO's decision did not rely in any part on the initial charge.  (DHO Report § V).  Indeed, the petitioner acknowledges that because the marijuana charge was dropped, "it had no bearing in the charges imputed against the petitioner."  (Pet. Traverse at 2).  Therefore, it is clear that the initial allegation of drug possession did not itself result in the deprivation of any good time credits or any other injury that might implicate a liberty interest.  *See generally Sandin v. Conner*, 515 U.S. 472, 484 (1995) (discussing the types of

deprivations that may give rise to a protected liberty interest in a prison

setting).  This claim is without merit.

### 4.    Inadequate Notice

The petitioner contends that his due process rights were violated in

connection with the memo from the DHO stating that the original charge

set forth in the Incident Report, possession of marijuana, was being

dropped and that a different charge, possession of a sharpened

instrument or weapon, based upon the box cutter blade, was being

substituted.  (*See* Pet. Brief at 6-7).  The petitioner admits that he

received this memo and that he signed it upon receipt.  However, he

contends that he is illiterate and does not understand English and that, as

a result, he did not understand what the memo said because it was

written in English and no interpreter was provided to explain its contents

or that he was facing a weapon possession charge until the DHO hearing.

The petitioner alleges that the DHO, who delivered the memo to him,

"coerced and intimidated" him into signing it.  (*Id.* at 7).  The petitioner

maintains that the DHO knew that he did not understand English and that

she thereby engaged in "deceiving actions" that "reek[ ] of fraud and

treachery ... and violate his due process and constitutional rights." (*Id.*)

Much of the petitioner's argument on this issue is hyperbole. The sole function of the memo was to advise the petitioner that the formal charge against him was being changed from drug possession to possession of a weapon, with the latter being based on the fact that a box cutter blade had been found in the search, which had previously been recited in the original Incident Report. Ultimately, the circumstances surrounding the delivery of the memo, the petitioner's act of signing it, and whether and to what extent petitioner understood it are relevant only insofar as they relate to whether the petitioner was afforded adequate notice under *Wolff*.

"The core of due process is the right to notice and a meaningful opportunity to be heard." *LaChance v. Erickson*, 522 U.S. 262, 266 (1998). In turn, a "primary purpose of the notice required by the Due Process Clause is to ensure that the opportunity for a hearing is meaningful." *City of West Covina v. Perkins*, 525 U.S. 234, 240 (1999). Thus, due process requires that an inmate be given written notice of the disciplinary charges against him no less than 24 hours prior to the

adjudicatory hearing.  *Wolff*, 418 U.S. at 564.  Further, "due process

requires that Spanish speaking inmates who cannot read and understand

English must be given notice and statements in Spanish or provided with a

translator, who should be present at the hearing in any event."  *Powell v.*

*Ward*, 487 F. Supp. 917, 932 (S.D.N.Y. 1980), *modified on other grounds*,

643 F.2d 924 (2d Cir. 1981); *cf*. 28 C.F.R. § 542.15(b) ("Wardens shall

ensure that assistance is available for inmates who are illiterate,

disabled, or who are not functionally literate in English.  Such assistance

includes provision of reasonable accommodation in order for an inmate

with a disability to prepare and process a Request or an Appeal.")

"[N]otice serves to compel the charging officer to be [sufficiently]

specific as to the misconduct with which the inmate is charged to inform

the inmate of what he is accused of doing so that he can prepare a

defense to those charges and not be made to explain away vague charges

set out in a misbehavior report."  *Sira v. Morton*, 380 F.3d 57, 70 (2d Cir.

2004) (internal quotation marks and citations omitted, bracketed

material original in *Sira*); *see also Wolff*, 418 U.S. at 564; *Taylor v.*

*Rodriguez*, 238 F.3d 188, 192-93 (2d Cir. 2001); *Whitford v. Boglino*, 63

F.3d 527, 534 (7th Cir. 1995) (*per curiam*); *Dible v. Scholl*, 506 F.3d 1106, 1110 (8th Cir. 2007).

There is no question that both the Incident Report and the DHO's subsequent memo advising of the substitution of the weapon charge for the drug charge were furnished to the petitioner more than twenty-four hours prior to his DHO hearing.[25]  The court has no doubt that the notice provided by these two documents together, both in terms of timing and content, was wholly adequate to satisfy due process provided that one assumes that the petitioner is functionally literate in English and thus could understand the memo; indeed, it was expressly alleged from the very first in the Incident Report that a box cutter blade had been discovered in the search of the petitioner's cell.  The government contends that "[t]here is no evidence, nor does Petitioner offer any, that he was forced to sign the memo or that he stated that he did not understand."  (Gov't Brief at 9).  However, the petitioner has expressly

_____

[25]There appears to be some question regarding whether the DHO delivered her memo advising of the substitution of the weapon charge for the original drug charge to the petitioner on September 20th or September 25th.  *See* note 3, *supra*.  But since the petitioner's hearing before the DHO did not occur until September 27th, the memo was received more than 24 hours prior to the hearing either way.

denied that he is able to understand English, and he has unambiguously

claimed that he did not understand the memo and that he was coerced

into signing it. (*See* Pet. Brief at 4-9). These assertions, while disputed,

are verified pursuant to 28 U.S.C. § 1746. (*See id.* at 10). Accordingly,

they constitute admissible evidence to the same extent as if contained in

an affidavit sworn before a notary. *United States v. Four Parcels of Real*

*Property in Green and Tuscaloosa Counties*, 941 F.2d 1428, 1444 n.36

(11th Cir. 1991). Moreover, prison officials themselves considered the

language barrier significant enough to warrant furnishing an interpreter

at the significant stages of the disciplinary process, from when the

petitioner was formally interviewed in the investigation, to his

preliminary hearing before the UDC, to his final hearing before the DHO.

Thus, there is conflicting evidence on whether the petitioner understood

the memo and whether prison officials employed means reasonably

calculated to advise the petitioner that he would be facing the weapons

charge sufficiently in advance of his hearing.[26] In the end, however, the

---

[26]The government has correctly pointed out that, although the Incident Report
itself actually charged the petitioner only with a violation of Code 113 of the Program
Statement, dealing with drug possession, the Incident Report does also describe that

court concludes that it need not actually decide whether the process

afforded was actually constitutionally deficient, because any potential

violation has not been shown to have prejudiced the petitioner.

"To prevail on a procedural due process challenge, the petitioner

must show that he was substantially prejudiced by the violation." *Frech*

*v. United States Att'y Gen.*, 491 F.3d 1277, 1281 (11th Cir. 2007) (citing

*Ka Fung Chan v. I.N.S.*, 634 F.2d 248, 258 (5th Cir. Jan.1981); *Patel v.*

*United States Att'y Gen.*, 334 F.3d 1259, 1263 (11th Cir.2003)).  Thus,

courts have held that even though a procedural violation may have

occurred during a prison disciplinary hearing, the disciplinary finding

---

a box cutter blade was found in the cell.  (*See* Gov't Brief at 3-4; Doc. 1-3 at 18, §
11).  The government further says that the Incident Report thus also "should have
included" a second charge for violating Code 104, dealing with possession of a
weapon or sharpened instrument.  (Gov't Brief at 3-4).  Courts have generally agreed
that the notice required by *Wolff* need not cite by number the particular prison rule
or code section allegedly violated, so it is at least arguable that the Incident Report
itself provided all the notice that was constitutionally due.  *Compare, e.g., Northern
v. Hanks*, 326 F.3d 909, 910-11 (7th Cir. 2003), and *Holt v. Caspari*, 961 F.2d 1370,
1373 (8th Cir. 1992), *with Evans v. Deuth*, 8 F. Supp. 2d 1135, 1137 (N.D. Ind. 1998);
*Hill v. Hobart*, 2006 WL 768521, *5 (W.D. Wis. 2006).  However, the court need not
resolve that question.  First, the government does not actually argue that; rather, it
contends only that the evidence shows that the petitioner sufficiently understood the
DHO's subsequent memo or had a fair opportunity to request assistance even if he did
not.  (*See* Gov't Brief at 7-10).  And second, the court concludes, as explained in the
text, that even assuming that there was a technical violation of procedural due
process, the petitioner he has failed to allege how he was actually prejudiced
thereby.

should not be overturned on federal habeas review unless the error was prejudicial.  *See Morzella v. Middlebrooks*, 2006 WL 3924254, *3 (N.D. Fla. 2006); *Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006); *Piggie v. Cotton,* 342 F.3d 660, 666 (7th Cir.2003); *Hallmark v. Johnson,* 118 F.3d 1073, 1080 (5th Cir.1997); *Griffin-Bey v. Bowersox*, 978 F.2d 455, 456 (8th Cir. 1992); *Elkin v. Fauver,* 969 F.2d 48, 53 (3d Cir.1992); *Powell v. Coughlin,* 953 F.2d 744, 750 (2d Cir.1991); *see also Bass v. Perrin,* 170 F.3d 1312, 1319 (11th Cir.1999) (inmates' preclusion from presenting evidence in their defense did not violate due process because the facts underlying the disciplinary action were not in dispute); *Pace v. Oliver*, 634 F.2d 302, 304 (5th Cir. Unit B Jan. 1981) (rejecting inmate's due process claim based on the failure to produce certain photographs in connection with disciplinary proceedings where such "photographs, even if available, were of such doubtful relevance that [the inmate] suffered no injury from their non-production.").

   There is no indication that the petitioner ever requested either a copy of the DHO's memo translated into Spanish or to have an interpreter read it to him.  There is also no claim or evidence that the petitioner

protested or even raised the fact during the hearing that he was being

prosecuted on a new or different charge from the one he anticipated.

Rather, he simply denied that he had anything to do with the weapon and

suggested that some other inmate had put it in the cell, possibly because

they were interested in getting the cell.  Even assuming that the DHO's

memo had been translated into Spanish or interpreted for the petitioner

when it was delivered to him, the petitioner has not specified what he

would have done differently, what other witnesses or evidence he would

have presented, nor how he would have otherwise altered his defense.

Because the petitioner has failed to show substantial prejudice from the

alleged due process violation, he is not entitled to relief on this claim.

### 5.    "Time Bar" Claim under 28 C.F.R. § 541.11

The petitioner asserts that the weapons possession charge and the

DHO hearing were "time barred" under federal regulations.  (Pet. Reply

at 6).  Specifically, the petitioner points to Table 2 contained in 28 C.F.R.

§ 541.11, which provides that once prison staff becomes aware of an

inmate's involvement in an incident implicating a violation of prison

rules, the staff is to give the inmate notice of the charges against him by

delivery of an Incident Report, *see* 28 C.F.R. § 541.15, and that the time between the incident and the notice is to be "ordinarily [a] maximum of 24 hours."  The petitioner says that the Incident Report was delivered to him within twenty-four hours but formally charged him only with drug possession, and that this charge was dropped.  It was not until weeks later, he says, that he was advised of the weapon possession charge, through the delivery of the DHO's memo.  The petitioner thus contends that the weapons charge for which he has been punished was "time barred" and that the disciplinary action taken against him was "in violation of his legal and due process rights ... [and] established rules and statutes."  (Pet. Reply at 6).  The court disagrees, for procedural reasons and on the merits.

First, the petitioner did not raise this claim in his petition.  Rather, he raised it for the first time in his traverse filed after the government filed its opposition to the petition.  A traverse is not the proper pleading to raise additional grounds for relief.  *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005); *United States v. Barrett*, 178 F.3d 34, 46 n.6 (1st Cir. 1999); *Jackson v. Duckworth*, 112 F.3d 878, 880 (7th Cir. 1997);

*Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994); *cf. United States v. Whitesell*, 314 F.3d 1251, 1256 (11th Cir. 2002) (court need not address issue raised for first time in reply brief).

Second, although the government has not specifically argued the point, the petitioner did not raise this claim in the prison disciplinary process (*see* Doc. 1-3 at 25, 27, 30) or in his administrative appeals prior to filing his habeas petition.  (*Id.* at 32-33, 35-36).  Prisoners must exhaust administrative remedies before habeas relief can be granted under 28 U.S.C. § 2241.  *Skinner v. Wiley*, 355 F.3d 1293, 1295 (11th Cir. 2004).  The Eleventh Circuit has characterized the failure of a federal inmate to exhaust administrative remedies before filing a habeas petition under 28 U.S.C. § 2241 as a "jurisdictional" defect.  *See Gonzalez v. United States*, 959 F.2d 211, 212 (11th Cir.1992); *United States v. Lucas*, 898 F.2d 1554, 1556 (11th Cir. 1990) (*per curiam*); *see also United States v. Williams*, 425 U.S. 987, 990 (11th Cir. 2005); *Winck v. England*, 327 F.3d 1296, 1300 n.1 (11th Cir. 2003); *Hegney v. Holder*, 177 Fed. Appx. 901, 903, 2006 WL 1049341, *2 (11th Cir. 2006).  Assuming that characterization to be binding, this court would be precluded from

considering the merits of a claim it discerned to be unexhausted, even if the government did not raise the issue.  *See, e.g., United States v. Herrera*, 931 F.2d 761, 763-64 (11th Cir. 1991).  Further, the petitioner's claim here would be subject not simply to dismissal without prejudice to allow him to exhaust administrative remedies.  The time limits for the petitioner to have pursued an administrative appeal of his disciplinary action expired long ago, *see* 28 C.F.R. § 542.15, and the petitioner has offered no cause for his failure to include this claim among the many he raised in his administrative appeals.  Thus, this claim would be procedurally defaulted.  *See Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 761 (3d Cir. 1996); *Carmona*, 243 F.3d at 630; *Sanchez v. Miller*, 792 F.2d 694, 699 (7th Cir. 1986).

But even assuming, without deciding, that the petitioner's claim here is subject to review on the merits, the court concludes that it is due to fail.  The petitioner asserts that his due process rights were violated because the prison staff allegedly did not provide him with an Incident Report that charged him with possession of a weapon within twenty-four hours of the search, as he says was required by 28 C.F.R. § 541.11.  Even

assuming arguendo that prison staff failed to comply with the regulation, he still cannot prevail.  Prison regulations are "primarily designed to guide correctional officials in the administration of a prison. [They are] not designed to confer rights on inmates." *Sandin,* 515 U.S. at 481-82.  In other words, "procedural requirements set forth in [a prison disciplinary] regulation are not themselves constitutional mandates." *Magluta v. Samples*, 375 F.3d 1269, 1278 n.7 (11th Cir. 2004).  The salient question, then, is whether the process that was afforded to the inmate was adequate under due process standards, not whether prison officials complied with the procedures set forth in the regulations.  *Id.*  And even if a procedural due process violation is shown, the petitioner must also show that it resulted in substantial prejudice before relief may be granted.  *Frech,* 491 F.3d at 1281; *Morzella,* 2006 WL 3924254, *3.

The court has already discussed why the petitioner has failed to establish that he is entitled to habeas relief based upon a violation of due process notice requirements under *Wolff*.  Although the 28 C.F.R. § 541.11 states that inmates are "ordinarily" to receive a written disciplinary notice within twenty-four hours of the underlying incident,

such is not constitutionally required.  *Sinde v. Gerlinski*, 252 F. Supp. 2d

144, 149-50 (M.D. Pa. 2003); *see also Orwat v. Maloney*, 360 F. Supp. 2d

146, 161-62 (D. Mass. 2005).  Nor has the petitioner shown how this

alleged violation caused him any prejudice.  This claim is due to be

rejected.

### 6.    Access to Evidence and Alleged Informant

Petitioner's next due process claim asserts that he "insistently

requested," but was denied access to, evidence allegedly used against

him, including the substance found in the cell that was originally alleged

to contain marijuana, the test results on that substance, photos of the

box cutter found inside the towel rack, and as well as to a confidential

informant he says was involved in his case and any evidence supplied by

him or her.  (Pet. Brief at 9-10).  The government responds that no

confidential informant was involved in his case, that he never sought to

examine evidence or call witnesses at or before his hearing, and that he

was afforded all the process that was due under *Wolff*.  (Gov't Brief at 7-

8).  Again, the court agrees with the government.

With regard to the petitioner's claim regarding his denial of access

to a confidential informant, "there is no constitutional right of cross-examination and confrontation of witnesses in a prison disciplinary hearing." *Young*, 37 F.3d at 1460 (*citing Wolff*, 418 U.S. at 567-68). Thus, "inmates subject to disciplinary actions may be denied the right to identify and cross-examine adverse witnesses when prison officials are concerned about reprisals." *Williams v. Fountain*, 77 F.3d 372, 374 (11th Cir. 1996). The due process clause does generally require that "the record of disciplinary proceedings document some good faith investigation and findings as to the credibility of confidential informants and the reliability of the information provided by them." *Id.*, 77 F.3d at 375 (*citing Kyle*, 677 F.2d at 1391). However, such is required only where the factfinder has either directly or indirectly "relied upon" information provided by a confidential informant "in determining guilt." *Id.*; *see also Kyle*, 677 F.2d at 1390 (recognizing that such documentation is necessary only "where the committee's determination is based upon hearsay information derived from an unidentified informant"). Also, "if the sanctions imposed by the disciplinary committee have a sufficient evidentiary basis independent of any unreliable information obtained

from confidential informants, then procedural due process concerns [are]

allayed." *Id.,* 77 F.3d at 375 (*citing Kyle,* 677 F.2d at 1391; *Young,* 37

F.3d 1457).

The petitioner has maintained that a confidential informant was

involved in his case, specifically, he says, by proving information that

prompted jail staff to conduct the search of his cell.  However, the

government has denied that a confidential informant was used in this

case in any capacity, and the documentation does not support the

petitioner's contrary assertion.  Nor does the petitioner attempt to allege

or explain how he might have come to know that an informant was

supposedly involved in his case.  Even if a confidential informant was

involved, the petitioner would not have a right to know his identity or

interview or cross-examine him.  *Williams,* 77 F.3d at 374; *Kyle*, 677 F.2d

at 1390.  But even assuming that a confidential informant provided a tip

that prompted the search of the petitioner's cell, that would mean no

more than that prison staff relied upon such information in deciding to

search the cell, not that the DHO relied upon such information in

determining the petitioner's guilt.  Indeed, the DHO's report clearly

states that she did not rely upon any such information.  Rather, she relied

solely upon the statement of the CO performing the search that he found

a box cutter blade in a common area of the petitioner's cell.  (*See* DHO

Report § V).  Because the DHO did not rely upon hearsay information from

a confidential informant in reaching her decision, the petitioner's claims

on this issue are misdirected and due to be denied.

With regard to the petitioner's claims pertaining to access to other

evidence, it is well established that an inmate facing disciplinary

proceedings is entitled "to call witnesses and present documentary

evidence in his defense when permitting him to do so will not be unduly

hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S.

at 566.  This implies that an inmate has a limited right of access to

documents and other evidence that may be relevant to his defense

provided that such access would not jeopardize legitimate penological

concerns.  *See Pace*, 634 F.2d at 305; *Young v. Kann*, 926 F.2d 1396,

1400-01 (3d Cir. 1991); *Smith v. Massachusetts Dep't of Correction*, 936

F.2d 1390, 1401 (1st Cir. 1991).  No due process violation occurs in this

context, however, when the requested evidence is denied, but would

have been irrelevant, repetitive, or unnecessary.  *See Pace*, 634 F.2d at

304; *see also Tedesco v. Secretary for Dept. of Corrections*, 190 Fed.

Appx. 752, 758, 2006 WL 1761322, *5 (11th Cir. 2006).  Furthermore, an

inmate may waive his right to review or present evidence or to present

witnesses if he fails to request that he be allowed to do so in a timely

fashion, no later than at the hearing at which his guilt or innocence is

determined.  *See Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002);

*Sweeney v. Parke*, 113 F.3d 716, 719 (7th Cir. 1997), overruled on other

grounds by *White v. Indiana Parole Bd.*, 266 F.3d 759 (7th Cir. 2001);

*Bedoya v. Coughlin,* 91 F.3d 349, 352 (2d Cir. 1996); *Von Kahl v. Brennan*,

855 F. Supp. 1413, 1425 (M.D. Pa. 1994); *see also McPherson v. McBride*,

188 F.3d 784, 786 (7th Cir. 1999) (rejecting contention that due process

requires later "consideration of evidence that could have been but was

not presented at the hearing").

The petitioner asserts that he was unconstitutionally denied access

to the substance found in the cell that was originally alleged to contain

marijuana, the test results on that substance, the box cutter blade itself

or the photos thereof, as well as any other evidence that might have

been relevant to his case.  However, the record shows that petitioner was advised, in Spanish, of his due process rights under *Wolff*, including specifically his right to call witnesses and to present documentary evidence at the hearing, but the petitioner chose not to do so.  (*See* Hrg. Rights Notice; DHO Report at 1-3).  The petitioner did seek to obtain information and access to evidence through internal requests to BOP staff and by FOIA requests (*see* Doc. 1-3 at 21-24 and 38-44), but these came only *after* his hearing.  As such, his requests came too late.  By failing to request access to evidence or to offer documents or witness testimony at or before his hearing, he waived the issue, precluding a due process violation.  *See Piggie,* 277 F.3d at 925; *Sweeney,* 113 F.3d at 719. Moreover, much or all of the evidence he sought was of doubtful relevance or significance, assuming that it existed at all.  Thus, it does not appear that any injury or prejudice would have resulted from its non-production in any event.  *See Pace*, 634 F.2d at 304.  These claims are without merit.

## III.    CONCLUSION

In accord with the foregoing, the instant petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 is due to be **DISMISSED WITH PREJUDICE**.  A separate final order will be entered.

The Clerk is directed to serve a copy of this Memorandum Opinion upon the petitioner and counsel for the respondents.

Done this 13th day of May 2009.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

153671